# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE REHABILITATION OF SCOTTISH RE (U.S.), INC. | ) ) ) ) | C.A. No. 2019-0175-AGB |

## ORDER DENYING THE PROTECTIVE ENTITIES' APPLICATION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL

WHEREAS:

A.     Protective Life Insurance Company is the parent company of Protective Life and Annuity Insurance Company, West Coast Life Insurance Company, and MONY Life Insurance Company (collectively, the "Protective Entities").  Since 1972, one or more of the Protective Entities have entered into or assumed approximately 60 reinsurance agreements under which Scottish Re (U.S.), Inc. ("Scottish Re") reinsures a portion of their life insurance policies.[1]  The Protective Entities also have agreements with third-party life insurers under which they coinsure and administer third-party business reinsured with Scottish Re.[2]

B.     Scottish Re is a Delaware domiciled insurance company licensed by the Delaware Department of Insurance that places reinsurance[3] through contractual

---

[1] Verified Amended Petition ("Protective Petition") ¶ 1 (Dkt. 297).

[2] *Id.*

[3] "'Reinsurance' refers to insurance bought by insurers.  A reinsurer assumes part of the risk and part of the premium originally taken by the insurer, known as the primary company."  Dkt. 488 ("Petition to Approve Rehabilitation Plan") ¶ 15 n.2.

arrangements with counterparties, cedents and retrocessionaires.[4] Scottish Re assumes business from approximately 189 ceding companies.[5]

C. On January 31, 2018, Scottish Re and each of the Protective Entities entered into a global settlement, which resolved a rate dispute and a number of other issues between them (the "Settlement Agreement").[6] Of particular importance to the Protective Entities' petition and application for certification of interlocutory appeal, Section 8 of the Settlement Agreement addresses the issue of offsets:

> **Offset.** The Parties agree that reinsurance premium and undisputed claims may be offset on any reinsurance treaty between Protective and SRUS, or on any treaties involving business coinsured with Protective, for balances incurred on or after the Effective Date.[7]

D. On March 6, 2019, the court entered the Rehabilitation and Injunction Order, placing Scottish Re into Rehabilitation under 18 *Del. C.* §§ 5903 and 5905, appointing the Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, as Receiver for Scottish Re (the "Receiver"), and entering certain injunctive relief under 18 *Del. C.* § 5904.[8]

---

[4] *Id.* ¶ 3.

[5] Petition to Approve the Release and Settlement Agreement with John Hancock Hr'g Tr. 12-13 (Feb. 12, 2020) (Dkt. 445).

[6] Protective Petition ¶ 3.

[7] *Id.* Ex. A ("Settlement Agreement") § 8. The Settlement Agreement defines the word "Protective" to include all four of the Protective Entities collectively. *Id.* at 1.

[8] Dkt. 18.

E.     On March 25, 2019, the Receiver filed a petition for approval of a plan for addressing contractual offset rights during the rehabilitation proceeding.[9] Section 5927 of the Delaware Uniform Insurers Liquidation Act ("DUILA"), which governs insurance insolvencies in Delaware, recognizes the use of offsets in a rehabilitation proceeding under limited circumstances.  This section provides, in relevant part, that:

> (a) In all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this chapter, such credits and debts shall be set off and the balance only shall be allowed or paid, except as provided in subsection (b) of this section below. . . .[10]

The Receiver's proposed offset plan was designed to provide a process by which the Receiver would review asserted offsets and authorize those that comply with this statutory requirement during the pendency of the rehabilitation proceeding until a viable rehabilitation plan is submitted and approved by the Court.

F.     On April 16, 2019, the Protective Entities submitted "Asserted Offset Claims" to the Receiver under the Receiver's then-proposed offset plan.  The Receiver objected to those "Asserted Offset Claims" because the calculations involved "triangular"[11] or "cross-entity" offsets, *i.e.,* "offsetting premium due by one

---

[9] Dkt. 42 ("Offset Petition").

[10] 18 *Del. C.* § 5927(a).

[11] "A triangular setoff is a setoff between an affiliate of a contractual party and the counter-contractual party."  *In re Orexigen Therapeutics, Inc.*, 596 B.R. 9, 17 (Bankr. D. Del. 2018).

Protective Entity against the reimbursed claims owed to a different Protective Entity."[12]  According to the Receiver, Section 8 of the Settlement Agreement does not authorize this *group* offsetting methodology, but instead requires mutuality such that amounts due to the Receiver by one Protective Entity may only be offset by amounts the Receiver owes that *same* entity.  The Receiver acknowledges, however, that Section 8 provided the Protective Entities with the right to take offsets—albeit individually for each entity—relating to the two types of reinsurance they had with Scottish Re, *i.e.*, yearly renewable term reinsurance and coinsurance.[13]

G.    On June 20, 2019, after a hearing and submission of a revised proposed plan, the court approved the Receiver's revised offset plan ("Offset Plan").[14]

H.    On July 10, 2019, the court approved a stipulation by the Receiver and the Protective Entities under which the Receiver agreed to certain offsets but continued to object to the group offsetting methodology.[15]

I.    On August 5, 2019, the Protective Entities filed their initial petition,[16] which they amended on October 28, 2019 (the "Petition").  The Petition was filed under Section III(C)(1) of the Offset Plan, which provides that in the event there is

---

[12] Protective Petition ¶ 11.

[13] Receiver Opening Br. 15 (Dkt. 364).

[14] Dkt. 211 ("Offset Plan").

[15] Dkt. 217.

[16] Dkt. 250.

a dispute regarding offsets, "either party may file a petition with the Court for a determination as to the Offset Amount or other appropriate relief."[17] The Petition sought "an order directing the Receiver to honor valid contractual obligations of Scottish Re . . . by allowing offset or recoupment of premium and claims payments pursuant to . . . [the] Settlement Agreement."[18]

J.      On December 13, 2019, the Receiver filed his motion to dismiss the Petition for failure to state a claim under Court of Chancery Rule 12(b)(6).[19] On May 19, 2020, the court issued an order granting the Receiver's motion (the "Order").[20] The Order decided three issues of first impression in dismissing the Petition.[21]

K.      First, the court held that the Settlement Agreement did not create the mutuality necessary to satisfy Section 5927 because the agreement "did not alter the Protective Entities' underlying legal relationships and rights with respect to the amounts owed to and due from Scottish Re relevant to determining mutuality."[22] In

---

[17] Offset Plan, Section III(C)(1).

[18] Protective Petition at 1.

[19] Dkt. 363; Receiver Opening Br. 8-9.

[20] Dkt. 486 ("Order").

[21] The court did not determine whether the Settlement Agreement authorizes the group offsetting methodology advocated by the Protective Entities because even if the Protective Entities were correct, they failed to state a claim for relief. *Id.* ¶ 6.

[22] *Id.* ¶ 11.

other words, the court construed Section 5927 to mean that mutuality requires that each party must own its claim in its own right, with the right to collect in its own name against the debtor in its own right. The Court also found that the Protective Entities' approach "would contravene the policy underlying Section 5927's mutuality requirement to ensure that similarly situated creditors are treated equally" by creating an impermissible "'contractual exception' to mutuality."[23]

L.     Second, the court concluded that the Settlement Agreement was not a single integrated transaction under the recoupment doctrine because "the underlying reinsurance agreements, as amended, are the controlling agreements that give rise to the claims for premium payments and claims or the payment of losses."[24] As a result, the Receiver was not required to allow cross-entity offsets under the recoupment doctrine.

M.     Third, the court held that a Receiver in a rehabilitation proceeding has no obligation to accept or reject an executory contract before the Receiver sets forth a final rehabilitation plan for approval.[25]

---

[23] *Id.* ¶ 12.

[24] *Id.* ¶ 15.

[25] *Id.* ¶ 19.

6

N.     On June 30, 2020, Protective Entities' filed an application for certification of an interlocutory appeal of the Order.[26]   The Receiver takes no position on the Protective Entities' application.[27]

NOW THEREFORE, the court having considered the parties' submissions, IT IS HEREBY ORDERED, ADJUDGED, and DECREED this 20th day of July 2020, as follows:

1.     As a general matter, "the purpose of [Supreme Court] Rule 42 is to prevent wasteful piecemeal litigation from overwhelming the docket of the Supreme Court."[28]   Accordingly, there is a presumption against granting certification of an interlocutory appeal if it will lead to piecemeal litigation.

2.     Supreme Court Rule 42 provides that an interlocutory appeal will not be certified "unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[29]   It further states

---

[26] Application of Protective Life Insurance Company, et. al. for Certification of Interlocutory Appeal ("Application") (Dkt. 486).   Although Supreme Court Rule 42 requires an application for certification of an interlocutory appeal to be filed within 10 days of entry of the order sought to be appealed, the Delaware Supreme Court extended deadlines in court rules that expire between March 23, 2020 and June 13, 2020 until July 1, 2020 in paragraph 9 of Administrative Order No. 6 – Extension of Judicial Emergency (Del. May 14, 2020).   The Protective Entities are also seeking an appeal as of right under 18 *Del. C.* § 5902(e) in addition to this application.   Application ¶ 4 n.2

[27] Dkt. 499.

[28] *Stein v. Blankfein*, 2019 WL 3311227, at *1 (Del. Ch. July 23, 2019).

[29] Sup. Ct. R. 42(b)(i).

that "[i]nterlocutory appeals should be exceptional, not routine, because they disrupt the normal process of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[30] Rule 42 sets forth eight criteria that "the trial court should consider" when evaluating an interlocutory appeal.[31] The rule instructs that the "trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs," but "[i]f the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[32]

3. The court agrees with the Protective Entities that the Order decided three issues of material importance (described in paragraphs K-M above) when it denied the Petition. Each issue is one of first impression in Delaware, which satisfies Rule 42(b)(iii)(A). The first issue also implicates Rule 42(b)(iii)(C) because it relates to the construction or application of the DUILA, which has not been settled by the Supreme Court.[33] The only question is whether appellate review should proceed now or await the court's consideration of a rehabilitation plan in the relatively near future. For the reasons that follow, the court will not certify the interlocutory appeal.[34]

---

[30] Sup. Ct. R. 42(b)(ii).

[31] Sup. Ct. R. 42(b)(iii).

[32] *Id.*

[33] *Id.*

[34] *Id.*

4. First, although difficult to predict, it is conceivable that appellate review of some or all of the issues may never be necessary.[35] The Receiver has filed a Petition for Approval of the Plan of Rehabilitation of Scottish Re, which provides for the continued operations of Scottish Re in a manner to allow for a successful rehabilitation within approximately five years (the "Rehabilitation Plan").[36] Based on the Receiver's proposed schedule, the court expects that after the filing of any amendments and objections to the Rehabilitation Plan, a hearing will be held this year in November or early December to consider the Receiver's Petition for Approval of the Rehabilitation Plan.[37] As part of the plan confirmation process, the Protective Entities and the Receiver may reach a compromise that yields an amendment to the Rehabilitation Plan, which would obviate the need for appellate review.[38]

---

[35] *See JPMorgan Chase Bank, N.A., v. Ballard*, 214 A.3d 449, 453 (Del. Ch. Aug. 7, 2019) (ORDER).

[36] Petition to Approve Rehabilitation Plan ¶¶ 25-27.

[37] *See* Dkt. 489 ¶ 5 (Motion to Schedule Status Conference on Petition).

[38] The court acknowledges that the requirement for offsets remains the same in the Rehabilitation Plan as in the Offset Plan, "*i.e.* offsets require mutuality, and will only be allowed so long as they are consistent with 18 *Del. C.* § 5927." Petition to Approve Rehabilitation Plan ¶ 39. However, this does not foreclose the possibility that the Receiver may agree to an alternate arrangement in connection with the Rehabilitation Plan.

5.	Second, the Protective Entities and other potential objectors may seek to appeal the court's approval of a final rehabilitation plan.[39]  Indeed, in connection with the approval of a final rehabilitation plan, the Protective Entities may seek appellate review of different issues than the ones adjudicated in the Order and/or other objectors may seek review of issues that overlap with those in the Order.  In either case, it would seem prudent to wait until the court has approved a plan so that appellate review of all such issues may be handled together.

6.	In sum, given the many moving pieces at this stage of a complex insurance receivership proceeding, it is unclear whether certification would be the most efficient and just course at this juncture.  Thus, consistent with Rule 42's instructions when "the balance is uncertain" in the trial court's consideration of the "likely benefits" and "probable costs" of interlocutory review, the Protective Entities' motion for certification of an interlocutory appeal of the Order is DENIED.



_/s/ Andre G. Bouchard_
Chancellor

---

[39] The Protective Entities assert that "any ultimate victory on appeal after final confirmation would be pyrrhic as [Scottish Re] will be unable to repay the Protective Entities for amounts that should have been offset during the pendency of the rehabilitation proceeding if [Scottish Re] is liquidated and its assets are distributed."  Application ¶ 14.  The court recognizes that although the Receiver is currently seeking approval of a plan that provides for the continued operations of Scottish Re in a manner to allow for a successful rehabilitation, the Receiver may seek an order for liquidation at any time during the proceedings.  The likelihood that the Receiver would change course and pursue a liquidation appears small, however, given the course of the proceedings in the trial court that led to the proposed Rehabilitation Plan.